Argued 5 October; decided 7 November, 1898.

## TOEDTEMEIER v. CLACKAMAS COUNTY.

[54 Pac. 954.]

STATUTORY CONSTRUCTION—TRACTION ENGINES.—The words "steam portable or traction engine," as used in the first section of the act of November 25, 1885 (Hill's Ann. Laws, §§ 4136–4138), relating to the moving of "traction or portable engines on public highways," have the same meaning as the words "steam traction or portable engines," used in the third section of that act. The expressions are convertible and intended in both cases to apply only to engines propelled by steam, within the rule that words or phrases of doubtful meaning are controlled in their legal significance by like words or phrases appearing elsewhere in the same act, where such a construction is reasonable.

Rule for Construing Doubtful Phrases.—Words or phrases of doubtful or obscure meaning in a statute are controlled in their legal signification by the same or like words or phrases used or appearing elsewhere in the same or another act to which special reference is made, wherein by reason of the context, grammatical environment, or some specific or other explanation, they are rendered clear and their explanation definite, unless the object to which they are applied, or the connection in which they appear, renders them obscure or meaningless in that sense, or requires them to be differently understood.

From Washington :    Thos. A. McBride, Judge.

Action by L. Toedtemeier and another against Clackamas County.    From a judgment for defendant, plaintiffs appeal.

Reversed.

For appellants there was a brief over the names of *Fenton, Bronaugh & Muir,* and *Samuel B. Huston,* with an oral argument by *Mr. William D. Fenton.*

For respondent there was a brief over the names of *Brownell & Campbell, Gordon E. Hayes, Livy Stipp,* and *T. J. Cleeton,* District Attorney, with an oral argument by *Mr. Geo. C. Brownell.*

Mr. Chief Justice Wolverton delivered the opinion.

This action is for the recovery of damages alleged to have been sustained through the negligence of the defendant.    It is alleged, in substance, that one Ernest Boeckman, an employee of the plaintiffs, while driving a team attached to a portable steam engine, the property of the plaintiffs, on a bridge spanning Kruse Creek, which it was the duty of the county to maintain and keep in repair, was, by reason of its breaking down, precipitated, with said team and engine, into said Kruse Creek, a distance of some eighteen feet, whereby said team was wounded, hurt, and bruised, and said engine partially,

if not entirely, destroyed.   The engine was one of Russell & Co.'s manufacture, of Massillon, Ohio, six-horse power, portable form, and could only be moved and transported from place to place with a team, or some power other than of its own generation.   A defense was interposed, which prevailed in the court below, that the plaintiffs were prohibited, by Section 4138, Hill's Ann. Laws, from driving over any bridge or culvert on any public highway with such engine without using thereon, for the purpose of securing its safety, four stout pieces of plank, each to be at least ten feet in length, one foot in width, and two inches in thickness, two of such pieces to be always under the wheels of such engine while crossing; and that the said Ernest Boeckman drove the same over and upon said bridge without the use of such plank, contrary to the provisions of said section.   The plaintiffs contend that the said engine did not come within the purview of the statute, but, if it should be held otherwise, then they maintain that the statute has, notwithstanding, given them a right of action against the county, and that it was not such negligence on the part of their employee to have attempted to so cross the bridge as would defeat a recovery.

In the view we have taken of the matter, it will only be necessary to consider the first of these propositions at this time.   The section alluded to is Section 3 of "An act to regulate the passage of bicycles, tricycles, velocipedes, traction, and portable engines on the public highways, or streets, in this state," approved November 25, 1885. The first, second, and third sections of that act are as follows :

"Section 1.   It shall be the duty of any person or persons in charge of any steam portable or traction engine, propelled wholly or in part by steam, over the public highways, or streets in this state, to bring the said

portable or traction engine to a stop when within one hundred yards of any person or persons going in the opposite direction with a team or teams, and remain stationary until said team or teams shall have passed by.

"Section 2. It shall be unlawful to blow the steam whistle of such portable or traction engines while upon the public highway, or while passing over the streets of any city, town, or village in this state.

"Section 3. It,shall be unlawful for any person or persons to drive any steam traction or portable engine over any bridge or culvert on any public street or highway within this state, without using on such bridge or culvert, for the purpose of securing its safety, four stout pieces of plank, each of which shall be at least ten feet in length, one foot in width, and two inches in thickness, two of the said pieces of plank to be always under the wheels of said steam traction or portable engine, while it shall be crossing said bridge or culvert."

The first section was amended in 1893, but not in such manner as to affect the present controversy. A violation of the provisions of the act is made penal by a subsequent section, and is punishable by both fine and imprisonment; and, in addition, the county is given a right of civil action for all damages resulting to any such bridge or culvert by reason of the crossing of such "steam traction or portable engine."

It will be noticed that the engine described in section 1 is "any steam portable or traction engine, propelled wholly or in part by steam." The engine described in section 3 is "any steam traction or portable engine," and the question is whether, by legislative intendment, the terms "steam portable or traction engine," as used in the first and "steam traction or portable engine," as used in the third section, are convertible in their signification, and mean the same thing. The meaning of the

terms as used in the first section is clear, as they are specifically defined by the clause "propelled wholly or in part by steam." But it is argued that by the use of the phrase "traction and portable engines" in the title of the act, and the absence of either of the terms "said" or "such" from section 3, as used in sections 1 and 2, to particularize the engines there dealt with as being the same as those first described in section 1, the legislature indicated its intention to include all portable as well as all steam traction engines within the operation of the latter section. If this be true, the act has a very wide range, and an engine of any kind or nature, capable of being moved about from place to place, whether by a force generated by the machine itself, or such as may be applied from without, would fall within the category, for it is assumed that there are no qualifying term or terms which confine its application to such portable engines as may be either operated or transported from place to place by steam as an agency of propulsion. The argument proves too much, as it is very evident that neither the legislature nor the promoters of the act designed that it should have an effect so general and comprehensive. The term "traction engine" is well understood, and is defined to be "a locomotive engine for drawing heavy loads upon common roads, or over arable land, as in agricultural operations :" Encyclopædic Dictionary. The word "steam" was used, whether aptly or not, to designate the motive power by which it is propelled. The word "portable" is also well understood, but the use of the term "steam portable," as employed in the first section, is unusual. Its intended signification, however, is applicable only to an engine having locomotion, and propelled wholly or in part by steam. Now, instead of the use of the words "steam portable [engine] or traction engine," which are, in and of themselves, convertible in

their legislative sginification as employed in the first section, they are transposed in the third so as to read "steam traction or portable engine," and the word "steam" should qualify "portable," as it does in the first section, and as it qualifies "traction" in the third. There is not the remotest indication anywhere in the act that it was intended to qualify "engine," so as to embrace any portable steam engine.   To do this we would be required to interpolate the qualifying word "steam" at a place in the context which would give a significance entirely different and foreign to its use elsewhere in the same act.

It is a rule of statutory construction that words or phrases of doubtful or obscure meaning are controlled in their legal signification by the same or like words or phrases used or appearing elsewhere in the same or another act to which special reference is made, wherein, by reason of the context, grammatical environments, or some specific or other definition or explanation, they are rendered clear, and their application definite and certain, unless the object to which they are applied, or the connection in which they appear, renders them obscure, nonsensical, or meaningless in that sense, or requires them to be differently understood.   The rule is stated in *Raymond* v. *Cleveland*, 42 Ohio St. 529, as follows:   "Where the meaning of a word or phrase in a statute is doubtful, but the meaning of the same word or phrase is clear where it is used elsewhere in the same act or an act to which the provisions containing the doubtful word or phrase has reference, the word or phrase in the obscure clause will be held to mean the same thing as in the instances where the meaning is clear."   And again, in *James* v. *Du Bois*, 16 N. J. Law, 293:   " It is no doubt a rule of construction that, if a statute makes use of a word in one part of it susceptible of two meanings, and

in another part of the statute the same word is used in a definite sense, we are to understand it throughout in that sense, unless the object to which it is applied, or the connection in which it stands, requires it to be differently understood in the two places." See, also, *Pitte* v. *Shipley*, 46 Cal. 154, 160 ; *Rhodes* v. *Weldy*, 46 Ohio St. 234, 243 (20 N. E. 461, 15 Am. St. Rep. 584).

The rule of construction which permits of the interpolation of words, or any alteration of their collocation, is an exception to the general rule, and is only permissible when the language of the statute, in its ordinary meaning and grammatical construction, leads to the manifest contradiction of the apparent purposes of the enactment, or to some inconvenience, or absurdity, hardships, or injustice, presumably not intended : Endlich, Interp. Stat. § 295. An application of the first-mentioned rule to the present case renders the meaning of the enactment clear and intelligible, and its purpose obvious and plain, while it obviates a resort to the exception for the purpose of attaching to it legal and practical signification. We are, therefore, constrained to adopt the construction which gives to the terms or phrase "steam traction or portable engine" the same meaning as "steam portable or traction engine," as defined by the first section: This is in harmony with the purposes of the act when the mischief which it was sought to remedy is considered. A traction engine with locomotion propelled wholly or in part by steam is differently constructed from the ordinary portable steam engine which is drawn about from place to place by some force applied from without. As an aid to locomotive propulsion, the drive wheels of the former are provided with calks or skew bars, attached to the rim or surface, to increase their adhesion to the road, and, the motive power being applied from within, the tendency of the machine is to push or shove the stationary substance

upon which it treads backward or from under it by its efforts to move forward ; hence, by reason of its structure, manner of propulsion, and great weight, its early use upon the public highways among the farming communities resulted in unusual damage to the small bridges and culverts. The mischief thus resulting did not exist as it pertained to the portable steam-engines mounted on carriages, with smooth tires, or upon ordinary trucks, to facilitate their transportation, which were much less ponderous in weight, and drawn by horses, or some exterior force ; so that there existed no more reason for the application of such legislation to engines of this character than to the ordinary vehicle of similar weight in common use upon the roads and highways. There is but little question that the legislature acted in view of these contemporaneous conditions and circumstances, and they are of persuasive force in determining the construction of the law which it has seen fit to enact as a remedy for the mischief then apparent. The act is also of a criminal character, and we are precluded by elementary rules of construction from giving it a liberal interpretation. These considerations impel a reversal of the judgment of the court below, and the cause will be remanded for such further proceedings as may seem appropriate.

REVERSED.